MARILYN SANBORN *vs*. ROBERT P. JOHNS.

Hampshire. December 11, 1984. — April 26, 1985.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Real Property*, Partition. *Probate Court*, Partition.

Where it appeared that a paragraph in a stipulation between parties to a divorce, providing that the wife was to convey her interest in certain real property to the husband, had been inadvertently omitted from the divorce decree, and where after the divorce the husband lived on the property, making substantial improvements and paying all expenses, the judge in partition proceedings brought by the wife some eleven years after the divorce could properly order the wife to convey her interest in the property to the husband. [724-725]

Attorneys who had represented a husband in divorce proceedings in which a stipulation was made providing that the wife would convey her interest in certain real property to the husband, a provision which was omitted, apparently inadvertently, from the divorce decree, were not thereby barred from representing the husband in proceedings brought by the wife some eleven years after the divorce seeking partition of the property in question. [725-726]

In a proceeding seeking partition of certain real property held by a former husband and wife, the wife was not entitled to object that the husband's attorney had violated S. J. C. Rule 3.07, DR 5-102, by testifying, where the wife had rejected the husband's offer to strike the attorney's testimony, electing instead to cross-examine him. [726]

PETITION for partition filed in the Hampshire Division of the Probate and Family Court Department on February 8, 1983.

The case was heard by *Rudolph A. Sacco*, J.

*Joel Pentlarge* for the plaintiff.

*Terry Scott Nagel* for the defendant.

DREBEN, J. The former wife appeals from a decree, in an action for partition[1] brought by her in 1983, which ordered her to convey her interest in the property to her ex-husband. We affirm.

[1] The wife's petition requested that the property be sold and that she be paid a portion of the net proceeds. See G. L. c. 241, § 6.

We relate the facts as found by the judge supplemented by uncontradicted evidence in the record. In 1967, the husband and wife purchased the property in question as tenants by the entirety, the total purchase price of $13,500 having been financed by a bank mortgage. In 1971 the parties were divorced. During the negotiations preceding the divorce, counsel for the husband and counsel for the wife reached an agreement on behalf of their clients which provided for child support, custody, and property settlement. The parties entered into a stipulation which in relevant part provided:

> "Now come the parties in the above captioned libel and, in the event that the Court sees fit to enter a decree granting said libel, it is contracted and agreed between the parties that the following may be incorporated therein:
> "  . . . .
> "3. Libellee to convey to the Libellant all her right, title and interest in the real estate situated at 10 Grandview Avenue, Granby, Massachusetts.
> "4. Libellee to remove household furnishings from said premises promptly and at least within 30 days from the date of the granting of the decree nisi and payment for moving same is to be borne by the Libellee."

The wife did not appear in person at the divorce proceedings but was represented by counsel. The husband and his counsel, Mr. Joseph P. Pamelia, Jr., were also present. Both counsel informed the trial judge, since deceased, that the parties had signed a stipulation. At the hearing, the trial judge dictated into the record each paragraph of the stipulation and placed the stipulation "on file". He made no criticism of its terms and did not purport to alter any of its provisions. As entered, however, the divorce decree, while including the substance of the other paragraphs of the stipulation, did not incorporate paragraphs 3 and 4, the provisions relating to the personal and real property of the parties.[2]

---

[2] In 1982, prior to the filing of the wife's petition for partition, the husband had brought an action entitled "Petition to correct Decree of Divorce." That

Subsequent to the decree the wife removed the household furnishings as provided in paragraph 4 of the stipulation. She failed, however, to convey her interest in the real estate to the husband, despite representations by her counsel that she would do so and despite numerous efforts by her counsel and by counsel for the husband to obtain her signature on the deed.

The husband assumed that he was the owner of the property and made substantial improvements, valued at $20,000 by the judge. The husband also contributed his own labor, spending eight to ten hours a week from 1971 to the time of the hearing in 1983, improving and maintaining the property. All expenses were paid by him. Payments for taxes, mortgage, and insurance, according to uncontradicted testimony, amounted to approximately $2,000 for the then current year. The children of the marriage have lived with him since 1976. At no time prior to 1982 had the wife asserted ownership of the property. Only after consulting with counsel in 1982, did she seek "to take advantage of the absence of [paragraphs 3 and 4 of the stipulation] from the original divorce decree."

The judge also found that the value of the wife's interest in the property was negligible at the time of the divorce and that the value of the household effects "transferred to the wife by the husband pursuant to his obligation under the stipulation" was $4,000. The value of the real estate at the time of trial was $50,000 with an outstanding mortgage of $8,000.

Based on the foregoing facts, the judge concluded it would be inequitable to permit the wife "after twelve years of inaction and silence" to realize any profits although "technically" she is still a tenant in common. He also found that the "ongoing contribution of the husband to the over-all expenses and maintenance of the house and its improvement since the date of purchase [in 1967] would create no credit due the wife." Citing

petition was "continued generally" by a different probate judge. The reason for this ruling does not appear in the record before us. In the present action the husband filed a counterclaim seeking conveyance alleging that the 1971 divorce decree, by inadvertence, did not fully incorporate the terms of the stipulation. The counterclaim invoked the equitable jurisdiction of the Probate Court. See G. L. c. 241, § 25, and G. L. c. 215, § 6.

G. L. c. 241, § 23[3], the judge ordered the wife to convey her interest to the husband.

1. The task of a court in partition proceedings is to make the portions of the parties "just and equal," that is, "just and equitable." *Batchelder* v. *Munroe*, 335 Mass. 216, 218 (1957). *Stylianopoulos* v. *Stylianopoulos*, 17 Mass. App. Ct. 64, 69 (1983). See G. L. c. 241, §§ 14, 15 and 31. See also § 25. The "equality is not absolute but is an equality according to the respective rights of the parties." *Batchelder* v. *Munroe*, 335 Mass. at 218. Nor are the parties bound by the record title. It is open to them to show different beneficial interests. *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 638 (1979).

Accordingly, the choice of charges to be made and their allocation varies according to the circumstances. Rent may or may not be deducted from the share of the occupant, and the judge is given considerable leeway. *Stylianopoulos* v. *Stylianopoulos*, 17 Mass. App. Ct. at 68-69. G. L. c. 241, § 23. Similarly, the extent to which improvements are to be taken into account will reflect the equities. For example, in *Batchelder* v. *Munroe*, 335 Mass. at 219, the court charged the petitioner with improvements made not only by the respondents but also with those made by their predecessors in title.

We think the data supplied by the husband concerning his expenses to maintain and improve the property warranted the judge's findings that the wife was not entitled to any credits. The judge could have found otherwise but was not required to do so. He could, in our view, properly determine, in light of the stipulation, that the husband should not be charged for rent and that all the improvements, including his labor, should be considered in determining his share. Contrary to the wife's con-

---

[3] The relevant portion of G. L. c. 241, § 23, provides:

"If the court in which partition proceedings are pending finds that one of the co-tenants has erected any buildings or made other permanent improvements on the common land, it may, if justice and equity so require, award such compensation as it deems proper for the value of such buildings or other improvements, not exceeding, however, the actual amount by which the market value of the common land has been increased thereby; and in awarding such compensation the court may deduct any benefit which the party claiming compensation has received from the common land . . . ."

tention, it was not error for the judge to recognize, albeit implicitly rather than explicitly, that the omission of paragraphs 3 and 4 from the divorce decree was not a deliberate decision.[4] Nor was it error for the judge to consider the stipulation and the husband's reliance on it in making the discretionary determinations called for in G. L. c. 241, § 23.

We recognize that to treat the matter as a partition proceeding is, in this case, a somewhat procrustean fit. We think, however, that in this unusual situation the judge acted appropriately in adjusting the claims in a manner which was just. Our approval of his resolution is not to be taken as a relaxation of the usual accounting requirements of a partition action.

2. The wife also claims that the husband's attorneys should have withdrawn from the case. The same attorneys who now appear for him represented him in the 1971 divorce proceeding. The wife claims that there is a conflict of interest because, if the husband were obliged to pay any monies to the wife to obtain sole ownership, it is likely that the attorneys would be liable for malpractice. We think this contention is without merit.

The interest of the husband's attorneys is congruent with the husband's cause and the matter is, for all practical purposes, just a later phase of the earlier litigation. Cf. *Gorovitz* v. *Planning Bd. of Nantucket*, 394 Mass. 246, 250 (1985). We do not consider the possible interest in defending a malpractice claim in this case to be the kind of financial interest which will compromise the lawyer's duty as an officer of the court. See Developments in the Law, Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1290 (1981). In any event, the evidence suggests that the husband was satisfied

---

[4] If, as the evidence suggests, the judge hearing the divorce intended to include paragraphs 3 and 4 in the divorce decree, but neglected to do so, Mass.R.Dom.Rel. P. 60(a) (1975), authorizes correction of the judgment at any time. See 11 Wright & Miller, Federal Practice and Procedure § 2854 (1973); *Jackson* v. *Jackson*, 276 F.2d 501, 503 (D.C.Cir.), cert. denied, 364 U.S. 849 (1960). Since another probate judge had "continued generally" the husband's petition to correct the divorce decree, see note 2, *supra*, the judge understandably sought a solution within the case as presented to him.

with his attorneys and consented to the representation after full disclosure. S.J.C. Rule 3.07, DR 5-101(A), as appearing in 382 Mass. 779 (1981).

The additional objection that Mr. Pamelia violated S.J.C. Rule 3.07, DR 5-102, as appearing in 382 Mass. 780 (1981), by testifying, is met by the fact that the husband offered to strike Mr. Pamelia's testimony as it was merely cumulative. The testimony had been taken de bene subject to a motion to strike. The wife, however, preferred to cross-examine Mr. Pamelia to pursue further her claim of conflict. We think the offer to strike the testimony, which the wife declined, defeats her right to claim that counsel should withdraw. Cf. *Borman* v. *Borman*, 378 Mass. 775, 792 (1979). Compare *Serody* v. *Serody, ante* 411, 415 (1985). We do not need to consider other aspects of counsel's decision to testify and yet remain as counsel. See Developments in the Law, Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. at 1290-1291.

The decree is affirmed with double costs.

*So ordered.*