NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-459                                        Appeals Court

        JAMES B. LODIGIANI & another[1]  vs.  NINA PARÉ.

                        No. 22-P-459.

        Hampden.     March 10, 2023. – August 22, 2023.

           Present:  Wolohojian, Shin, & Hodgens, JJ.


Real Property, Partition, Life estate, Remainder interests.
     Probate Court, Partition proceedings, Judicial discretion,
     Attorney's fees.  Practice, Civil, Attorney's fees.  Waste.


     Petition for partition filed in the Hampden Division of the
Probate and Family Court Department on February 22, 2019.

     The case was heard by Claudine T. Wyner, J., and motions
for reconsideration and for attorney's fees and costs were
considered by her.


     Karen M. Lodigiani for the petitioners.
     Jessica R. Sofio for the respondent.


     SHIN, J.  This is the petitioners' appeal from a decree

entered in the Probate and Family Court ordering that the

proceeds from a partition and sale of the subject property

---

     [1] Anne A. Betramello, individually and as representative of
the estate of Leonard C. Lodigiani.

(property) be divided equally among the parties.  Prior to the partition, the parties, who are all siblings, owned remainder interests in the property subject to the life estate of their father, Leonard C. Lodigiani.  While the life estate was still in existence, the respondent-remainderman Nina Paré caused damage to the property over the course of several years.  The petitioners-remaindermen James B. Lodigiani and Anne A. Beltramello incurred costs to mitigate the damage, which they then sought to recoup from Nina[2] in the underlying partition action.

The judge determined that James and Anne's claim for contribution from Nina was beyond the scope of the partition action, and so she could not consider it.  This was because, the judge reasoned, Leonard had the duty as life tenant to preserve the property for the benefit of the remaindermen; thus, James and Anne's exclusive remedy was to bring an action for waste against Leonard's estate.  We conclude that this was error because Nina had her own duty as a remainderman not to impair the rights and interests of her coremaindermen.  It was therefore within the judge's authority to consider whether to account for the property damage caused by Nina when determining how to equitably divide the proceeds from the partition sale.

---

[2] As some of the parties share the same surname, we will refer to all parties hereafter by their first names.

Further concluding that additional explanation from the judge is needed as to her denial of the petitioners' motion for attorney's fees and costs, we vacate the decree in part, and the order denying the motion for attorney's fees and costs and remand.

Background. We summarize the judge's factual findings, supplemented by uncontested facts of record.[3]

On March 11, 2004, Leonard and his wife Helen deeded the property to James, Anne, and Nina as joint tenants with rights of survivorship, while reserving a life estate for themselves. The deed provided that Leonard and Helen had "the exclusive right to occupy the premises" during their lifetimes, along with the obligation to pay "the cost of all insurance, maintenance, fees, charges and expenses relating to the premises" and "all taxes assessed or imposed with respect thereto, and all principal and interest on any mortgages thereon."

Following execution of the deed, Leonard and Helen lived together at the property with their fourth child John, who has developmental disabilities. After Helen died in 2007, Leonard continued to live at the property with John. In or about 2011,

_____

[3] Several documents referred to in the petitioners' brief are not included in the record appendix, including the petition itself and the deed. We stress that it is an appellant's duty to produce an appendix containing all portions of the record relevant to the issues raised on appeal. See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019).

Nina moved into the property, where she assisted in caring for both Leonard and John.

Nina, who has a history of hoarding, continued that behavior while living at the property. In or about July 2012, James began sending e-mail messages to Nina, urging her to clean up and "not add to the mess." Despite his efforts, by 2014 the property was in very poor condition. Late that year James arranged and paid for a dumpster to be brought to the property for the purpose of cleaning up the clutter and trash that Nina had accumulated. Nina's behaviors persisted, however, leading the town's health department to issue several violation notices to Leonard in 2016 for violations of the State sanitary code.

In July 2017 James told Nina that she was no longer welcome to stay at the property and needed to remove her belongings. When Nina did not oblige, James told her in early 2018 that he and Anne "as majority owners of the house" needed to prepare the property for sale and that Nina needed to leave. In May 2018 Leonard moved himself and John out of the property.

In or about December 2018, Leonard obtained a no-trespass order against Nina. Thereafter, James, Anne, and their families worked to clean up the property. The clean-up process took approximately one year and required a series of dumpsters at a cost of over $6,000, which James paid.

Meanwhile, in February 2019, James, Anne, and Leonard filed a joint petition for partition, naming Nina as respondent. The petition requested that Leonard be allowed to surrender his life estate and that the property be sold and the proceeds distributed in proportions that included compensating the petitioners for the costs they incurred to mitigate the damage caused by Nina. The judge issued an interlocutory decree ordering partition by sale and appointed a commissioner, who closed the sale of the property on January 27, 2020.[4] Leonard died the next day.[5]

The case proceeded to a bench trial on the issue of how the sale proceeds should be divided among the parties. From the evidence the judge found it "clear that [Nina] was the cause of the waste, trash accumulation and debris in and around the property." The judge further found that James and Anne "incurred significant expense and spent considerable time to essentially clean up their sister's mess." Nonetheless, the judge concluded that Leonard, not Nina, was the appropriate person from whom to seek reimbursement because Leonard, as the

---

[4] The commissioner's report is not included in the appendix, and there is no other document in the appendix showing the amount of proceeds received from the sale.

[5] Anne was later substituted for Leonard as personal representative of his estate.

life tenant, had the exclusive right to possession at all relevant times, and so was "the sole person [with] the duty to preserve and protect the property for the benefit of the parties." Based on this reasoning, the judge concluded that James and Anne's claim for contribution was beyond the scope of the partition action and instead had to be raised through an action for waste against Leonard's estate.

The petitioners moved for reconsideration under Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), and separately moved for attorney's fees and costs under G. L. c. 241, § 22. The judge summarily denied both motions. She then issued a final decree ordering that the sale proceeds be divided equally among the parties, after deducting the commissioner's expenses and charges.

Discussion. 1. Equitable division. The overall objective of a judge in a partition proceeding is to make a "just and equitable" division "according to the respective rights of the parties." Batchelder v. Munroe, 335 Mass. 216, 218 (1957). See Gonzalez v. Pierce-Williams, 68 Mass. App. Ct. 785, 787 (2007) ("purpose of partition proceedings is to balance the rights and equities of the parties concerning the property at issue"). Although there is a "presumption that partitioned property should be equally divided," the presumption can be rebutted if a party "show[s] that his [or her] beneficial interest is

different from that indicated by the record title" (quotation and citation omitted). Canepari v. Pascale, 78 Mass. App. Ct. 840, 844 (2011). A judge making a division therefore has the discretion to depart from the presumption if warranted by the circumstances bearing on the equities and the parties' rights, including any prior financial contributions made by a party to preserve the common estate. See Sanborn v. Johns, 19 Mass. App. Ct. 721, 724 (1985); Stylianopoulos v. Stylianopoulos, 17 Mass. App. Ct. 64, 69-70 (1983).

It is evident from the judge's decision here, however, that she believed she lacked the discretion to credit James and Anne for the costs they incurred in cleaning up the property, even though Nina was the cause of its poor condition. The judge took this view based on a conclusion of law: that a remainderman like Nina cannot be held responsible for any property damage that occurred during a prior life tenancy because it is the life tenant who has the right to possession and the corresponding duty to preserve the property for the remaindermen. From this premise the judge further concluded that the party responsible for the damage was Leonard -- who, the judge found, could have obtained a no-trespass order against Nina sooner than he did -- and so the exclusive vehicle through which James and Anne could seek to recoup their costs was an action for waste against Leonard's estate.

We think the judge viewed the scope of her discretion too narrowly.  It is true, as a general matter, that a life tenant has the "duty to preserve the estate for the benefit of the remaindermen" and can be held liable to the remaindermen in an action for waste for property damage occurring during the tenancy.  Matteson v. Walsh, 79 Mass. App. Ct. 402, 406 (2011).  See Fay v. Brewer, 20 Pick. 203, 204 (1825).  The Legislature long ago enacted G. L. c. 242, § 1, which provides that "[i]f a tenant in dower, by the curtesy, for life or for years commits or suffers waste on the land so held, the person having the next immediate estate of inheritance may have an action of waste against such tenant to recover the place wasted and the amount of the damage."  Persons "holding vested remainders after . . . [a] life estate" are among those persons "having the next immediate estate of inheritance" under G. L. c. 242, § 1.  Thayer v. Shorey, 287 Mass. 76, 79 (1934).  See G. L. c. 242, § 2 ("A person having . . . a remainder or reversion in fee simple or fee tail after an intervening life estate . . . may have an action of tort in the nature of waste to recover the amount of the damage against the tenants named in the preceding section").  An action for waste can also be brought against a tenant's estate "for waste committed or suffered in the tenant's lifetime."  G. L. c. 242, § 3.

The concept of waste embodies the principle that a tenant has the "obligation to treat the premises in such manner that no harm be done to them and that the estate may revert to those having an underlying interest undeteriorated by any wilful or negligent act." Delano v. Smith, 206 Mass. 365, 370 (1910). Waste is defined as "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession which results in its substantial injury." Id. It can take two forms -- voluntary, resulting from the tenant's intentional conduct, and permissive, resulting from neglect or omission. See Gade v. National Creamery Co., 324 Mass. 515, 516-517 (1949); Chalmers v. Smith, 152 Mass. 561, 564 (1891); Matteson, 79 Mass. App. Ct. at 406-407.

While there are few cases in Massachusetts addressing when a life tenant can be held liable to a remainderman for acts committed by others, we need not reach that question, nor need we decide specifically whether the judge was correct to conclude that Leonard's delay in obtaining a no-trespass order against Nina would be actionable as permissive waste against his estate. The only question we must decide is whether the judge, when apportioning the proceeds from the partition sale, had the discretion to take into account damage to the property caused by Nina while the life tenancy was in existence. We conclude that she did. Our conclusion is buttressed by long recognized

exceptions to the general principle that a life tenant is responsible to a remainderman for injuries to the estate; these include exceptions for injuries caused by "the acts of God," by "public enemies," and, as pertinent here, by "the reversioner himself."[6] Willey v. Laraway, 64 Vt. 559, 561 (1892). Accord Rogers v. Atlantic, G. & P. Co., 213 N.Y. 246, 249 (1915). This last exception reflects the commonsense notion that remaindermen (or reversioners) who injure the premises by their own acts cannot then hold the life tenant liable for the damage.

Because Nina is therefore responsible for the damage to the property that she herself caused, we see no bar to James and Anne's asserting a claim to account for that damage in a partition action. Although the parties did not have possessory interests while Leonard was still living, they had vested future ownership interests arising from a common source of title. See Thayer, 287 Mass. at 78-79. Nina had the duty as a remainderman

---

[6] Although some of the cases we cite involve reversionary interests, the rationale of those cases applies equally to remainder interests. Both types of interests are future interests in property that arise after termination of the prior estate, but differ as to who is receiving the interest. In particular, a reversion is "a future interest in land arising by operation of law whenever an estate owner grants to another a particular estate, such as a life estate or a term of years, but does not dispose of the entire interest" and "occurs automatically upon termination of the prior estate, as when a life tenant dies." Black's Law Dictionary 1578 (11th ed. 2019). A remainder is "[a] future interest arising in a third person . . . who is intended to take after the natural termination of the preceding estate." Id. at 1545.

not to impair the ownership interests of her coremaindermen James and Anne. See Wilson v. Linder, 21 Idaho 576, 584 (1912) ("joint remaindermen in expectancy" have "duty and obligation of protecting the common title the same as if they were cotenants"); Givens v. Givens, 387 S.W.2d 851, 853 (Ky. Ct. App. 1965) ("As in the case of joint tenants or tenants in common, public policy dictates that a remainderman shall not impair the title or interests of his coremaindermen"); Ransom v. Bebernitz, 172 Vt. 423, 432 (2001) ("co-remaindermen have a fiduciary relationship to each other that no one of them may impair the rights or interests of his co-remaindermen"). The judge thus had the discretion to consider James and Anne's claim for contribution from Nina in deciding what would be a just and equitable division of the proceeds from the partition sale. See Lowe v. Adams, 77 N.M. 111, 117 (1966) ("in every jurisdiction where the action for partition has been considered as one calling for equitable interposition and relief, it has been uniformly held that an improving cotenant, who has in good faith enhanced the value of the common remainder estate, should be reimbursed for the value of such improvements upon a sale in partition, and the fact that such improvements were made by a tenant in common in reversion, during the previous life estate,

is not a bar to such contribution by the coremaindermen upon the death of the life tenant").[7]

We express no view on whether James and Anne are entitled to contribution. Although Nina argues that the judge could have in her discretion divided the sale proceeds equally, even taking into account the clean-up costs incurred by James and Anne, that issue is not properly before us. It must be decided by the judge on remand.

2. Attorney's fees and costs. As mentioned, the petitioners brought their motion for attorney's fees and costs pursuant to G. L. c. 241, § 22, which states in relevant part:

> "The reasonable expenses and charges of partition proceedings, including examination of title and preparation of plan ordered by the court under section seventeen, and the fees of counsel, of the commissioners, and of all agents, guardians and other persons appointed to represent interests in accordance with section nine, shall be determined by the court, and in case of sale paid by the commissioners out of the proceeds. . . ."

This statute "furnishes an exception to the general American rule that each party to litigation is responsible for its own expenses." Aiello v. Aiello, 63 Mass. App. Ct. 914, 915 (2005). See Gonzalez, 68 Mass. App. Ct. at 788-789. Its purpose "is to

---

[7] See also Smith v. Smith, 133 Ga. 170, 174 (1909) (improvements made by remainderman during life estate "would be taken into consideration in making the partition . . . after the termination of the life-estate"); Dalgarno v. Baum, 182 Va. 806, 808 (1944) ("in a suit for partition instituted after the death of the life tenant," remainderman entitled to compensation from coremaindermen for improvements made during life estate).

apportion the expenses incurred to achieve the common benefit from partition of shared property among the parties receiving that benefit." Aiello, supra at 916.

Here, we are unable to determine whether the judge acted within her discretion in denying the petitioners' motion because she did not give reasons for her decision. We must therefore vacate the order and remand the issue for further consideration. For purposes of remand, we note that, contrary to the suggestion in the petitioners' motion and their brief, G. L. c. 241, § 22, does not automatically entitle them to contribution toward all of their fees and costs; the statute applies only to those expenses incurred to achieve a common benefit for the parties. See Gonzalez, 68 Mass. App. Ct. at 789. Some of the expenses sought by the petitioners related to tasks such as preparing the petition, but a large portion related to trial preparation, the trial itself, and posttrial motions. The question of which of these expenses achieved a common benefit for the parties is for the judge to decide in the first instance on remand. See Aiello, 63 Mass. App. Ct. at 916.

Conclusion. So much of the decree as relates to the distribution of the sale proceeds among the parties is vacated; the decree is otherwise affirmed. The order denying the petitioners' motion for attorney's fees and costs is also vacated. The matter is remanded for further proceedings

consistent with this opinion.  Nina's request for appellate attorney's fees and costs is denied.

<u>So ordered</u>.